ALBERT CARTER, Respondent, v TRAVELERS INSURANCE COMPANY, Appellant, and UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.

First Department, November 21, 1985

### APPEARANCES OF COUNSEL

*Thomas E. Paterson* of counsel *(William P. Kennedy,* attorney), for appellant.

*Vincent B. Frontero* of counsel *(Brand & Brand,* attorneys), for United Services Automobile Association, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

On March 16, 1981, Henry Smith was injured when he was struck by a vehicle in a parking lot on the premises of the

Medical Society of the County of Kings. Dr. Stanley Goldstein, the vehicle's owner, had left it in the parking lot while he attended a meeting. Plaintiff, a custodial employee of the Medical Society, was the operator.

Smith brought a personal injury action against plaintiff, Dr. Goldstein and the Medical Society. That action was eventually settled for $300,000, to which Travelers Insurance Company, the Medical Society's insurer, contributed $225,000 and United Services Automobile Association, Dr. Goldstein's insurance carrier, the balance. In the interim, however, inasmuch as they had disclaimed coverage as to him, although Travelers had provided him with a defense of the Smith lawsuit, plaintiff had commenced the instant action against both insurers for a declaration of his rights under their respective policies. In settling the Smith action the two insurers agreed that the disposition was subject to a determination of their rights in this action. By virtue of the settlement, plaintiff is but a nominal party to this lawsuit and the only dispute is between the two insurers which, subject to the resolution of the coverage question, have apportioned the liability of their respective interests on a 75% (Medical Society/plaintiff)—25% (Dr. Goldstein/plaintiff) ratio. Travelers' coverage is not at issue.

The facts underlying the present controversy are not in dispute. The Medical Society maintained, free of charge, an on-premises parking lot for its staff, employees and visitors. Those who used the lot would regularly leave their keys so that, if necessary, the vehicles could be moved. Smith, a Pinkerton Agency employee, was a security guard at the Medical Society's premises, where his duties included providing an escort for those who used the parking lot. On those occasions, such as meetings, however, when the lot would become congested, Smith would also be assigned to assist in parking and moving vehicles.

On the day of the accident, Smith was assigned to the parking lot. Plaintiff, whose license had expired, had relieved him during the luncheon break. When Smith returned, the lot was congested and he joined plaintiff in parking and moving cars. As Smith was directing a car out of the lot he was struck by Dr. Goldstein's vehicle, which plaintiff was operating. Dr. Goldstein's vehicle had a "stick shift" with which, apparently, neither plaintiff nor Smith was familiar, although, as an employee of the Society over the past 10 years, plaintiff had worked in the parking lot about four days a week and sometimes was left in charge.

The parties stipulated at the trial that, had Dr. Goldstein appeared as a witness, he would have testified that he would not have left his vehicle with the attendants had he known they were not familiar with a stick shift or that one of them, plaintiff, who was to be the driver, was not a licensed operator. It was also stipulated that both policies of insurance were in full force and effect at the time of the incident.

Premised upon its finding that plaintiff was operating the vehicle in question without the permission of Dr. Goldstein, Trial Term held that United Services was under no obligation under its policy to defend or indemnify plaintiff with respect to the Smith action. A judgment entered to that effect also declared that Travelers was obligated to defend and indemnify plaintiff and directed that Travelers pay United Services $75,000, which was the amount United Services had paid as its share of the $300,000 settlement. Travelers appeals. Since we believe that the statutory presumption of permissive use has not been rebutted, we modify the judgment to declare that United Services' policy covers the Smith accident and vacate the provision directing Travelers to pay United Services $75,000.

Vehicle and Traffic Law § 388 (1) provides: "Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." Under this statute an owner of a vehicle is responsible for the negligence of whomever, with his consent, operates the vehicle, whether on a public highway, private highway or parking lot. (See, Farber v Smolack, 20 NY2d 198, 204.) Once proof of ownership has been established, as it has here, a presumption, rebuttable only by substantial evidence to the contrary, attaches that the operator is using the vehicle with the owner's consent, express or implied. (Leotta v Plessinger, 8 NY2d 449, 461, and cases cited; Albouyeh v County of Suffolk, 96 AD2d 543, affd 62 NY2d 681; Blunt v Zinni, 32 AD2d 882, affd 27 NY2d 521.)

On this record it is clear that plaintiff, or any other person employed at the parking lot, had Dr. Goldstein's permission to operate his vehicle within the confines of the lot. Such permission is, as the case may be, explicit in Dr. Goldstein's conduct in turning the vehicle over to the attendant with the keys so

that it might be parked, or implicit in his actions in parking the vehicle in the lot and leaving it there with the keys.

United Services attempts to avoid the presumption of consent by citing Dr. Goldstein's testimony that he would have withheld permission had he known that plaintiff was not licensed at the time or that neither he nor Smith was familiar with a stick shift. But that is a circumstance which has never been considered determinative of the issue of permissive use. Indeed, in *Hardeman v Mendon Leasing Corp.* (87 AD2d 232, *affd* 58 NY2d 892) and *Allstate Ins. Co. v Dailey* (47 AD2d 375, *affd* 39 NY2d 759) the vehicle owners advanced an even stronger argument in that they were duped by a deception either as to the driver's authority *(Hardeman)* or identity *(Allstate)*. In both cases further inquiry or investigation might well have revealed information that would have persuaded them to withhold permission. Yet, in each case the trier of the fact was justified in finding that consent had been given.

Here, Dr. Goldstein, a guest of the Medical Society, chose the convenience and relative security of the attended parking lot which the Society provided free of charge. In placing his vehicle under the parking attendant's control, knowing that the attendant could, or would, move it about the lot, he took the situation as he found it. He should not now be heard to say he would not have given permission had he known otherwise. *(Schulman v Consolidated Edison Co.,* 85 AD2d 186; *Brindley v Krizsan,* 18 AD2d 971, *affd* 13 NY2d 976.)* In *Winnowski v Polito* (294 NY 159) a 14-year-old boy, acting on a police officer's direction, drove his father's double-parked car onto the sidewalk and struck pedestrians, injuring them. Despite uncontradicted testimony that the boy had been expressly forbidden to drive the car at any time, the statutory presumption of implied permission prevailed.

Citing the onerous burden entailed in investigating the driving qualifications of each employee who might drive his automobile, United Services argues, as does the dissent, that an owner, such as Dr. Goldstein, who leaves his automobile and keys in a parking lot has a right to assume that the parking lot operator employs attendants who are lawfully licensed and capable of driving competently. Appealing as it is, this argument is unavailing in the face of the statutory presumption of permissive use. Every owner of a motor vehicle who entrusts his automobile to another, including the father in *Winnowski (supra)* who expressly forbade his 14-year-old son to drive his car, assumes as much. Moreover, the

argument proceeds on the hypothesis that the consent which is implied from the use of an automobile under Vehicle and Traffic Law § 388 (1) is factually based, whereas in reality it is no more than a legal fiction. If liability could be avoided by such testimony as Dr. Goldstein's, that fiction, i.e., the presumption of permissive use, would soon be completely subverted, since an owner could always assert some unexpressed but assumed limitation on his consent. Furthermore, as a practical matter, it would be impossible to draw the line on such claims.

"[Vehicle and Traffic Law § 388] expresses the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant. The owner of the automobile is the obvious candidate, for he can most easily carry insurance to cover the risk." *(Continental Auto Lease Corp. v Campbell,* 19 NY2d 350, 352.) Thus, in any assessment of whether an owner has consented to the use of his motor vehicle, public policy considerations necessarily play a significant role. *(Hardeman v Mendon Leasing Corp.,* 87 AD2d 232, 236, *supra.)* For that reason, Trial Term's determination does not withstand analysis. While the injured party is not financially aggrieved by the result, he would be if the Medical Society was uninsured or underinsured and insolvent. Yet, the rationale of the holding mandates just such a result. The public policy embraced by section 388 should not be sacrificed merely because the Medical Society, by virtue of its insurance coverage, happens to be financially responsible. Nor should such vague and speculative testimony as Dr. Goldstein's as to what he would have done had he known the true state of facts overcome the presumption of permissive use. And, of course, that the operator of a vehicle is unlicensed, or is not competent to operate the vehicle, does not affect the owner's statutory responsibility. *(Grant v Knepper,* 245 NY 158; *Winnowski v Polito,* 294 NY 159, *supra.)*

Thus, since plaintiff was a permissive user of Dr. Goldstein's vehicle he qualifies as an insured to whom United Services owed an obligation to defend and indemnify. Moreover, his actions in operating the vehicle in question are imputed to United Services' named insured, Dr. Goldstein.

Accordingly, the judgment, Supreme Court, New York County (Edward J. Greenfield, J.), entered December 13, 1984, should be modified, on the law, to declare that United Services' policy covers the Smith accident and to vacate the provision which directs that Travelers pay United Services

$75,000, and, except as thus modified, affirmed, with costs and disbursements payable to Travelers by United Services.

KUPFERMAN, J. (dissenting). The facts are well set forth in the majority opinion.

While this is a controversy between two insurance companies, it naturally derives from the liability, if any, of the Medical Society and/or the doctor.

Clearly, the Medical Society is liable, but is the doctor liable?

The determination can have a profound effect on the cultural mores of the community. How often do we turn our automobile over to a garage parking attendant or to valet parking at some restaurant or club? We assume that the person who takes the car is qualified and that the organization to whom the person reports exercises some supervision. In the ordinary course, we would not, as here stipulated for the doctor, give custody of the automobile to someone not qualified.

If the majority opinion is good law, then no thinking automobile owner will accept valet parking or allow a garage attendant to park the car.

At the very least, there should here be a claim over, in full, from the doctor against the Medical Society which, of course, leads to the result of affirmance. (Cf. General Obligations Law § 5-325 [1].)

MURPHY, P. J., CARRO and LYNCH, JJ., concur with SULLIVAN, J.; KUPFERMAN, J., dissents in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on December 13, 1984, modified, on the law, to declare that United Services' policy covers the Smith accident and to vacate the provision which directs that Travelers pay United Services $75,000, and, except as thus modified, affirmed. Defendant-appellant shall recover of United Services Automobile Association $75 costs and disbursements of this appeal.