THELMA AARONS, an Infant, by BERTHA AARONS, Her Guardian ad Litem, and BERTHA AARONS, Plaintiffs, *v.* STANDARD VARNISH WORKS, MAXWELL A. STEINBOCK and MILTON SCHWARTZ, Defendants.

ELAINE GOLDBLADT, an Infant, by SAMUEL GOLDBLADT, Her Guardian ad Litem, and SAMUEL GOLDBLADT, Plaintiffs, *v.* STANDARD VARNISH WORKS, MAXWELL A. STEINBOCK and MILTON SCHWARTZ, Defendants.

Supreme Court, New York County, May 18, 1937.

*Daniel Mungall* [*William L. Hughes* of counsel], for the defendant Standard Varnish Works, for the motions.

*Zelenko & Wald* [*Jacob Zelenko* of counsel], for the plaintiffs, opposed.

VAN VOORHIS, J. These actions were brought to recover by reason of the personal injuries of two infants who were run into while playing on the sidewalk by an automobile belonging to the defendant Standard Varnish Works. The plaintiffs discontinued against the defendant Steinbock and were nonsuited as to the defendant Schwartz. Steinbock was driving the auto at the time of the accident. Schwartz was a salesman for Standard Varnish Works which had placed the auto in his custody for use in his work. The cases were submitted to the jury upon the principle that the ownership of the automobile by Standard Varnish Works

created a presumption that it was being used at the time of the accident with its permission under section 59 of the Vehicle and Traffic Law, and that it was for the jury to decide whether to credit the testimony of Schwartz which would, if believed, destroy the presumption and exonerate Standard Varnish Works from liability. (*Piwowarski* v. *Cornwell*, 273 N. Y. 226; *St. Andrassy* v. *Mooney*, 262 id. 368.) There is nothing in the record to show what Steinbock was doing with the automobile at the time of the accident. He himself became incompetent at some time before the trial and did not testify. It appeared that he was accompanied at the time of the accident by a girl named Shirley Harris who also was not called as a witness. Defendant Standard Varnish Works argues from the mere fact that a girl was riding in the car with him that he must have been on some personal errand of his own. But this conclusion hardly follows from the premise on which it is based. It is also argued that the fact that the accident happened in Manhattan outside of Schwartz's usual sales territory of Bronx and Westchester establishes as matter of law that the automobile was being operated for some personal object. This also does not follow especially in view of the evidence that Schwartz's territory was not confined to Bronx and Westchester, it being conceded that if he got orders in defendant's behalf in Manhattan, they would not be refused, and that defendant's office was in Manhattan.

Plaintiffs put in evidence several admissions by Schwartz made to Mrs. Aarons and to a police officer, that he had given permission to Steinbock to drive the automobile at the time of the accident. These admissions were received as binding upon Schwartz but not upon Standard Varnish Works, and lost their force when Schwartz's motion for nonsuit was granted.

Defendant Standard Varnish Works called Schwartz as its own witness, and he denied making the admissions previously testified to by plaintiffs' witnesses, Mrs. Aarons and the police officer, and stated that upon the morning of the accident he had discovered that the automobile had a flat tire, and had told Steinbock to take the detachable rim off the car and wheel it to a service station and have the tire repaired, and then bring it back and put it on the automobile. He denied that he told Steinbock that he could drive the automobile itself to the service station or anywhere else.

In view of the fact that the admissions of Schwartz which had been put in evidence by the plaintiffs as part of their principal case became inoperative as a result of the nonsuit as to Schwartz, the plaintiffs recalled Mrs. Aarons in rebuttal, and she again contradicted Schwartz's denial on the stand that he had given

permission to Steinbock to drive the car at the time of the accident.

Standard Varnish Works earnestly contends that the presumption of consent arising from ownership cannot avail the plaintiffs by reason of the circumstance that plaintiffs placed in evidence the deposition of defendant's treasurer thereby making him their witness, which showed that the automobile had been intrusted to Schwartz for business, and that he was expressly authorized to store it in any garage he saw fit, and have it repaired, and that Standard Varnish Works paid for repairs, garage bills and gasoline and oil upon Schwartz's vouchers.

Nothing contained in this deposition is inconsistent with the assumption that Steinbock had received the automobile from Schwartz to change the tire and drive it somewhere to have the flat repaired, or to road test it, or to do something else essential to its use in the business of Standard Varnish Works and deliver it to Schwartz at his office in Manhattan. The fact that the car was being driven by someone other than the person to whom the corporation had directly intrusted it is not controlling. (*Jackson* v. *Brown & Kleinhenz, Inc.*, 273 N. Y. 365; *Clarke* v. *Mason Au & Magenheimer Mfg. Co.*, 240 App. Div. 1001; affd., 264 N. Y. 661.) For road testing see *Zuckerman* v. *Parton* (260 N. Y. 446). Moreover, inasmuch as a corporation can act only by its representatives, if Schwartz turned the automobile over to Steinbock for legitimate purposes, his act in doing so may be said to be that of the corporation itself.

Being entitled to make out their *prima facie* case with the aid of the presumption of consent arising from ownership, the plaintiffs were not obliged to supply direct evidence as to what Steinbock was doing with the automobile at the time of the accident. Although the deposition of defendant's treasurer, put in evidence by plaintiffs, limits the purposes for which the automobile could have been used with Standard Varnish Works' consent, nevertheless it does not exclude all purposes, and the plaintiffs were still entitled to have it presumed in the absence of credible evidence to the contrary that the automobile was being devoted to some purpose not excluded by the deposition.

Defendant also maintains that even though the deposition is not inconsistent with assuming that the automobile was being driven with its consent, nevertheless, inasmuch as plaintiffs took the affirmative to some extent by introducing the deposition as part of their case, they lost the benefit of the presumption and became required to supply each element of a *prima facie* case by affirmative testimony without the assistance of the presumption. This position is untenable. The deposition shows that Schwartz had

charge for certain purposes of defendant's automobile; it does not relate to what occurred between him and Steinbock. It is doubtless true that such presumptions become extinct when the evidentiary facts are established, which the presumptions presuppose or are sometimes said to take the place of. This is true whether the facts when ultimately established are contrary to those presumed to exist, in which event the presumption is said to have been rebutted, or whether they are in conformity, in which case there is no further need to presume the existence of facts which have themselves been directly established. It would be unreasonable and unwarranted, however, to hold that a plaintiff is not entitled *prima facie* to the benefit of all of the elements of the factual situation presumed to follow from a recognized presumption, merely because he has supplied direct evidence of some of the elements but not of enough of them to create an issue of fact if the aid of the presumption be withdrawn. Evidence must always be produced of the facts which give rise to the presumption, in this case the ownership of the automobile. But instances are few where there is not also present testimony supporting some of the facts presumed to follow from the basic facts. If a presumption is no longer efficacious where that situation occurs, much of the law on the subject will need to be rewritten.

"The law indulges in presumptions from the necessities of the case in the absence of *sufficient* evidence to establish the fact to be proved. While the *known facts* may be *insufficient of themselves* to justify a particular inference, they may tend to weaken or strengthen a particular presumption. * * * In this case the presumption of the validity of the second marriage *is greatly strengthened* by the uninterrupted cohabitation of the parties to it for more than twenty years and until the death of one of them, the attitude of their friends, relatives and acquaintances, the birth of children and the conduct of the alleged former wife." (*Matter of Meehan*, 150 App. Div. 681, 684.) (Italics not from original.)

It is regarded as immaterial whether Schwartz became an independent contractor as salesman on a commission basis. This position is apparently taken by defendant in view of the fact that the jury were instructed that there could be no recovery if the automobile was being used for any purpose not related to the business of Standard Varnish Works. This circumstance should not be allowed to confuse the issue by attempting to convey the idea that recovery against Standard Varnish Works was limited to the principles of agency under the common law before the adoption of section 59 of the Vehicle and Traffic Law (formerly Highway Law, section 282-e). (*Ferris* v. *Sterling*, 214 N. Y. 249.) The

defendant received the benefit of an instruction to the jury that Standard Varnish Works could not be held to have consented to any use of its automobile not connected with its business. This limited the maximum extent to which they could find that defendant's consent operated and did not mean that no recovery could be allowed except on the principle of *respondeat superior*. Rather it would appear that defendant in asserting that it had intrusted its automobile to Schwartz as an independent contractor is conceding that it allowed him a discretion in its use of considerable magnitude.

Neither is the fact that Steinbock was an unlicensed operator sufficient to establish that no consent was given by the owner. The word " legally " as used in section 59 of the Vehicle and Traffic Law has been construed as referring merely to the legality of the consent and not to absence of an operator's license. The object of this statute is to increase the responsibility of owners of automobiles for their operation upon the highways. " That purpose would be to a considerable extent thwarted if its language were construed in a manner which denied the remedy where in the operation of a motor vehicle the operator violates a statutory provision intended for the promotion of the public safety." (See dissenting opinion of LEHMAN, J., in *Taylor* v. *United States Casualty Co.*, 269 N. Y. 360, 366, which is in this respect in harmony with the decision of the majority. Also *Floyd* v. *Consolidated Indemnity & Ins. Co.*, 237 App. Div. 190; *Devitt* v. *Continental Casualty Co.*, 245 id. 115; revd. on other grounds, 269 N. Y. 474.) It also did not appear that Schwartz had knowledge that Steinbock was unlicensed, for which reason his motion for nonsuit was granted.

The verdicts are held to be sustained by the evidence except that in the instance of Samuel Goldbladt loss of services of his daughter Elaine Goldbladt was not left to the jury as an element of damage, and that verdict should not, therefore, be greater than the amount of Doctor Stein's bill and that of the Hospital for Joint Diseases, aggregating $431.

The motions by defendant Standard Varnish Works for a new trial are denied except as relating to the verdict of Samuel Goldbladt for $681 which is directed to be set aside and a new trial granted as to him only unless within ten days from the service of the order with notice of entry he stipulates in writing to reduce his verdict to $431, in which event the motions by defendant Standard Varnish Works for a new trial are denied *in toto.*