[802 NYS2d 1]

Kevin Bernard et al., Respondents, v Musah Mumuni, Appellant, and Saday Allhassan, Respondent, et al., Defendant.

First Department, August 18, 2005

## APPEARANCES OF COUNSEL

*Kelly, Rode & Kelly, LLP*, Mineola (*Eric B. Betron* of counsel), for appellant.

*Gersowitz, Libo & Korek, P.C.*, New York City (*Andrew L. Libo* and *Jeff S. Korek* of counsel), for Kevin Bernard and others, respondents.

*Martin, Fallon & Mullé*, Huntington (*Larry M. Shaw* of counsel), for Saday Allhassan, respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

Plaintiff was injured in an accident involving a minivan owned by defendant Musah Mumuni. Prior to the accident, Mumuni had entrusted the minivan to his friend Osmanu Allhassan; at the time of the accident, the vehicle was being driven by Osmanu Allhassan's son, defendant Saday Allhassan, who did not hold a valid driver's license. As more fully discussed below, prior decisions that have applied Vehicle and Traffic Law § 388 in similar situations establish that the evidence in this case raises an issue of fact as to whether Saday Allhassan operated the minivan with Mumuni's implied consent. Accordingly, Mumuni's motion for summary judgment was properly denied.

Given his undisputed ownership of the vehicle, Mumuni is required to come forward with substantial evidence to rebut the strong presumption that Saday Allhassan drove the minivan with Mumuni's consent (*see Murdza v Zimmerman*, 99 NY2d 375, 380 [2003]). While there may be some uncertainty in the law as to whether the presumption of the owner's consent, by itself, suffices to raise an issue of fact as to consent where the owner's evidence rebutting the presumption is uncontradicted (*see Country Wide Ins. Co. v National R.R. Passenger Corp.*, 407 F3d 84 [2d Cir 2005] [certifying questions to the New York Court of Appeals]; *Country Wide Ins. Co. v National R.R. Passenger Corp.*, 5 NY3d 728 [2005] [accepting such certified questions]), that issue need not detain us here. In this case, the record contains evidence from which a trier of fact could reasonably infer that Saday Allhassan had Mumuni's implied consent to drive the minivan.

To begin, there is a stark disagreement between Mumuni and Osmanu Allhassan as to the directions, if any, Mumuni gave Os-

manu Allhassan about the use of the minivan upon entrusting it to him. Mumuni has testified that he specifically instructed Osmanu Allhassan not to drive the vehicle while it was entrusted to him. Osmanu Allhassan, however, has stated under oath: "Mr. Mumuni never advised me not to operate the subject vehicle. He gave me no instructions with respect to the use thereof." Plainly, Osmanu Allhassan's testimony that Mumuni entrusted the minivan to him without imposing any restrictions on its use raises an issue of fact as to whether Mumuni gave his implied consent to Osmanu Allhassan's operation of the minivan (*see Tabares v Colin Serv. Sys., Inc.*, 197 AD2d 571, 572 [1993] [issue of fact as to permissive use arose from conflicting testimony concerning what restrictions, if any, employer placed on employee's use of a company vehicle]). True, Mumuni may argue at trial that his purpose in entrusting the minivan to Osmanu Allhassan (to allow the vehicle to be transferred to a new owner while he was out of the country) weighs against a finding of implied consent. That purpose, however, cannot be said to negate implied consent as a matter of law.

Of course, in order to prevail against Mumuni, plaintiff must prove not only that Mumuni implicitly consented to Osmanu Allhassan's use of the minivan, but also that such implicit consent extended to Saday Allhassan. The record contains sufficient evidence to support such a finding. In the event the trier of fact credits Osmanu Allhassan's testimony that Mumuni did not impose any restrictions on use of the minivan during the entrustment, Mumuni's implied consent to use of the vehicle could reasonably be found to extend to any person Osmanu Allhassan permitted to drive the minivan, either expressly or impliedly. It is well established that, when the owner of a vehicle places it under the unrestricted control of a second person, the owner's consent to use of the vehicle may reasonably be found to extend to a third person whom the second person permits to drive it (*see May v Heiney*, 12 NY2d 683 [1962]; *Jackson v Brown & Kleinhenz, Inc.*, 273 NY 365, 369 [1937]; *Tabares v Colin Serv. Sys.*, 197 AD2d 571, *supra*; *Schrader v Carney*, 180 AD2d 200, 210 [1992]; *Lovetere v Stackhouse*, 25 AD2d 628 [1966]; *Comstock v Beeman*, 24 AD2d 931 [1965], *affd* 18 NY2d 772 [1966]; *Brindley v Krizsan*, 18 AD2d 971 [1963], *affd* 13 NY2d 976 [1963]; *Clarke v Mason Au & Magenheimer Confectionery Mfg. Co.*, 240 App Div 1001 [1933], *affd* 264 NY 661 [1934]). As the Court of Appeals stated in one of the cases cited above: "[The owner,] having thus relinquished its immedi-

ate control over the automobile and having vested the control in another [Brown & Kleinhenz, Inc.] without limitation of authority, must not now be heard to question the finding that the consent given by Brown & Kleinhenz, Inc., to [the driver] was impliedly its [the owner's] consent" (*Jackson v Brown & Kleinhenz, Inc.*, 273 NY at 369).*

While there is no evidence that Osmanu Allhassan gave Saday Allhassan *express* permission to use the minivan, the record does contain sufficient evidence to give rise to an inference of *implied* permission. Specifically, Osmanu Allhassan left the keys to the minivan on a table in his house, where Saday Allhassan found them on the day of the accident. Saday Allhassan, who was unaware of Mumuni's entrustment of the minivan to his father, assumed the keys belonged to the vehicle his father had said he would purchase for him. He therefore took the keys, located the minivan, and drove it on a personal errand, during which the subject accident occurred. In our view, a trier of fact could reasonably infer from the totality of these circumstances— the fact that Osmanu Allhassan and Saday Allhassan, a father and son, were members of the same household; the availability of the keys on a table in the house; and Saday Allhassan's knowledge that his father intended to give him a car—that Saday Allhassan reasonably believed that he had his father's permission to drive the minivan (*see Matter of Travelers Prop. Cas. Corp. v Maxwill-Singleton*, 300 AD2d 225, 226 [2002] [evidence that owner of a car parked it behind his shop and left the keys with his employee was sufficient to support a finding that employee drove the car with owner's consent, notwithstanding owner's testimony that he never gave anyone permission to drive the car]).

The dissent and Mumuni, in propounding their view that the trier of fact could not reasonably infer implicit consent by Mumuni to Saday Allhassan's use of the minivan, rely heavily on the fact that Saday Allhassan did not hold a driver's license, but only a learner's permit, at the relevant time. The argument seems to be that an owner who entrusts his or her vehicle to a friend, even if the owner does so without articulating any

---

* The dissent's efforts to distinguish certain of the above-cited cases from the instant case are misplaced, since the cases are not cited on the premise that each is factually identical to the instant case. Rather, we cite the cases as illustrations of the general principle under which Mumuni's implied consent to Osmanu Allhassan's operation of the minivan (if found to have been given) may be found to extend to Saday Allhassan.

restrictions on the vehicle's use, should not be deemed to consent to the friend's allowing an unlicensed person to drive the vehicle. The short answer to this argument is that it has already been rejected by the Court of Appeals. In *Brindley v Krizsan* (*supra*), the Court of Appeals affirmed (13 NY2d 976) this Court's affirmance (18 AD2d 971) of a judgment against a car owner, notwithstanding that the unlicensed driver had been given control of the car, not by the owner himself, but by an intermediary to whom the owner had entrusted the car. In affirming the judgment, we explained (18 AD2d at 972):

> "Here, there is support for the finding of the trial court that the owner vested his friend Zsombok with general control of the car without limitation of authority. Under these circumstances, a driver to whom Zsombok loaned the car was properly found to be driving it with the implied consent of the owner, *and the fact that such driver was unlicensed does not affect the statutory responsibility of the owner.*" (Emphasis added and citations omitted.)

The result in *Brindley* is readily explained as required by the policy animating Vehicle and Traffic Law § 388, namely, "that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant" (*Murdza v Zimmerman*, 99 NY2d at 379, quoting *Continental Auto Lease Corp. v Campbell*, 19 NY2d 350, 352 [1967]). Where the owner of a vehicle entrusts it to another person without setting forth any express restrictions as to the vehicle's use, and the person entrusted with the vehicle permits an unlicensed third person to drive it, the financial burden of an accident caused by the unlicensed driver's negligence should fall on the owner, who put in motion the chain of events leading to the accident. That burden should not fall on an innocent stranger, such as plaintiff in this action, who happens to be injured in the accident. In order to give full effect to the policy of Vehicle and Traffic Law § 388, the driver's lack of a license should not preclude a finding that he or she operated the vehicle with the owner's implied consent (*see Carter v Travelers Ins. Co.*, 113 AD2d 178, 181-182 [1985] [to effectuate the policy of section 388, owner who left his car at an attended parking lot was deemed to have consented to the operation of the car by an unlicensed parking lot attendant]).

The dissent attempts to distinguish *Brindley* from the instant case on the ground that the driver in *Brindley* "had the express

permission of the person to whom the car had been entrusted." The dissent overlooks the fact that Vehicle and Traffic Law § 388 provides that permission giving rise to liability under the statute may be either "express or implied." As previously discussed, while it is undisputed that Saday Allhassan did not have his father's express permission to drive the minivan, the facts appearing in the record raise an issue of fact as to whether the son had the father's implied permission to use the vehicle. Contrary to the dissent's assertion, nowhere in Osmanu Allhassan's affidavit does he "concede[ ] that he did not give permission, express or implied, to his son to operate the vehicle." To the contrary, the father's affidavit is not only consistent with a finding of implied permission, it sets forth sufficient facts to support such a finding. And, under the authorities previously cited, the father's implied permission, if found by the trier of fact, is imputable to Mumuni, the owner, to the extent the trier of fact credits the father's testimony that Mumuni entrusted the vehicle to him without providing any instructions as to its use. Thus, the present record contains sufficient evidence to support imposing statutory liability on Mumuni.

Ultimately, the dissent's position that plaintiff has no cause of action against Mumuni—notwithstanding the evidence plainly supporting a finding that Mumuni gave unfettered control of the minivan to Osmanu Allhassan—rests on the claim that "a connection" between Osmanu Allhassan and his son, Saday Allhassan, is somehow "lack[ing]." In making this assertion, the dissent disregards the aforementioned facts appearing in the record that give rise to a fair inference that the father gave his implied consent to the son's use of the vehicle. Whether such an inference should be drawn is a question for the trier of fact, not for this Court. We therefore affirm the order denying Mumuni's motion for summary judgment.

Accordingly, the order of the Supreme Court, Bronx County (Janice L. Bowman, J.), entered December 24, 2003, which denied Mumuni's motion for summary judgment dismissing the complaint and all cross claims as against him, should be affirmed, without costs.

SWEENY, J. (dissenting). Mumuni's motion for summary judgment should have been granted. There is no proof that Saday Allhassan drove Mumuni's car with his express or implied permission.

This is a personal injury action where plaintiff was a pas-

senger in a car involved in an accident with a minivan owned by defendant Mumuni and operated by defendant Saday Allhassan.

Mumuni had arranged to sell his minivan but was going to be out of the country before the sale was completed. On or before February 19, 2002, he left the minivan and the signed title with his friend, Osmanu Allhassan, who was to turn the vehicle and title over to the purchaser and collect the money for Mumuni.

On March 2, 2002, Allhassan's son, Saday, who was living at college, came home to do some errands. There was no one at home and, letting himself in, he saw the minivan keys on a table. Saday testified at his deposition that he did not know who owned the minivan and no one had given him permission to drive it, that his father owned no vehicle except for a taxi cab he used for business and had never let him use any vehicle in the past, and that he presumed the minivan was his because his father had previously told him that he would buy him a car. However, Saday conceded that his father never actually told him that the minivan was his and in fact never told him that he had purchased a car for him. Furthermore, Saday had not even spoken to his father for two weeks preceding the accident. Based on this testimony, it appears that Saday never received permission from his father to use the vehicle. Rather, on his own, he took the keys and drove off. And if Saday did not have permission from his father, he would not have had it from Mumuni.

It is well settled that Vehicle and Traffic Law § 388 creates a strong presumption that the use of a vehicle is with the permission of the owner and that this presumption is rebuttable only by substantial evidence to the contrary (*Leotta v Plessinger*, 8 NY2d 449, 461 [1960]; *Blunt v Zinni*, 32 AD2d 882 [1969], *affd* 27 NY2d 521 [1970]). Substantial evidence was presented here. No one claims that Mumuni gave Saday express permission to drive the van. As for implied permission, plaintiff argues that although Osmanu Allhassan understood that Mumuni gave him the van for the purpose of transferring it to the new owner, Mumuni did not impose any restrictions on its use. Such circumstances do not tend to show Mumuni's implied permission for Saday to drive the van when Saday only had a learner's permit, not a valid New York State driver's license, and there is no evidence that Mumuni ever impliedly gave permission for an unlicensed operator to drive his van.

The majority places great reliance on *Brindley v Krizsan* (18 AD2d 971 [1963], *affd* 13 NY2d 976 [1963]) for the proposition that liability can attach even where the operator was unlicensed.

However, the majority's reliance is belied by the fact that the operator of the vehicle in *Brindley* had the express permission of the person to whom the car had been entrusted.* In this case, even Osmanu Allhassan concedes that he did not give permission, express or implied, to his son to operate the vehicle. In his affidavit, Osmanu avers that his son mistakenly thought the keys on the table were to the vehicle he had discussed purchasing. This lack of a connection between Saday and his father is fatal to plaintiff's case.

> "[A] finding of constructive consent and its attendant liability under section 388 requires a consensual link between the negligent operator and one whose possession of the vehicle is authorized. Otherwise, implied consent under section 388 (1) would amount to strict liability—a result clearly at odds with the section and its purposes" (*Murdza v Zimmerman*, 99 NY2d 375, 381 [2003]).

Notwithstanding the laudatory intent of Vehicle and Traffic Law § 388 (1), the facts must support the liability. Mumuni adduced substantial evidence that Saday Allhassan operated the minivan without his permission, express or implied, and plaintiff failed to adduce any facts tending to show the contrary, other than Osmanu's disputed testimony that Mumuni entrusted the van to him without any express restrictions on its use. Such testimony, if credited, is insufficient to raise an issue of fact as to whether Mumuni impliedly agreed to permit Osmanu's unlicensed family member to operate the van. Therefore, Mumuni's motion for summary judgment should have been granted and the complaint dismissed as against Mumuni.

SAXE and NARDELLI, JJ., concur with FRIEDMAN, J.; TOM, J.P., and SWEENY, J., dissent in a separate opinion by SWEENY, J.

Order, Supreme Court, Bronx County, entered December 24, 2003, affirmed, without costs.

---

* It should be noted that each of the other cases cited by the majority is distinguished by crucial facts glaringly absent in our case, e.g., permission given on previous occasions (*Comstock v Beeman*, 24 AD2d 931 [1965], *affd* 18 NY2d 772 [1966]); evidence of express permission given to driver (*Schrader v Carney*, 180 AD2d 200 [1992]).